**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

_____
CARTERET VENTURES, LLC,                )
                                       )            Civil Action No.: 09-2831 (JLL)
                    Plaintiff,         )
                                       )
          v.                           )                **OPINION**
                                       )
LIBERTY MUTUAL INSURANCE               )
COMPANY,                               )
                    Defendant,         )
                                       )
                                       )
_____)

**LINARES, District Judge.**

Defendant Liberty Mutual Insurance Company ("Liberty Mutual") moves to dismiss the

Complaint of Plaintiff Carteret Ventures, LLC ("Carteret") pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Court has

considered the submissions in support of and in opposition to the motion and decides the matter

without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth

below, this Court grants Defendant's motion.

**I.      BACKGROUND**

This action arises out of an issue regarding an exchange transaction under Internal

Revenue Code § 1031. (Compl. ¶1.) Plaintiff Carteret Ventures, LLC ("Carteret") transferred

over $11 million to Excalibur 1031 Group, LLC ("Excalibur"), who was acting as intermediary

in the § 1031 exchange. (Id. at ¶2.) Carteret alleges that its funds were stolen by Excalibur's

owners and/or employees.  (Id.)  In June 2008, Carteret filed a complaint against Excalibur and related individuals in state court.  (Id. at ¶18.)  The complaint was dismissed without prejudice on August 4, 2008, pursuant to an agreement between Excalibur and Carteret.  (Id. at ¶22.) Excalibur and the other defendants in that matter agreed that Carteret was owed at least $8,500,000, plus interest.  (Id.)

Carteret filed its present Complaint against Liberty Mutual Insurance Company ("Liberty Mutual") on May 6, 2009, in state court.   On June 11, 2009, Liberty Mutual removed the action to this Court based upon diversity of citizenship.  Liberty Mutual is the insurer of a Commercial Crime Policy ("Policy") held by Excalibur.  Carteret asserts that Excalibur's Policy covers a portion of its loss.  In Count One of the Complaint, Carteret seeks a declaration that it is "expressly an insured and Loss Payee under the Policy."  (Id. at ¶30.)  Count Two alleges that, "[p]ursuant to the terms of the policy, Liberty [Mutual] is obligated to pay Carteret $2,500,000.00, minus the applicable deductible."  (Id. at ¶36.)  Finally, Count Three alleges that Liberty Mutual's denial of coverage to Carteret "constitutes a breach of the implied duty of good faith and fair dealing owed to [it]" under the Policy.  (Id. at ¶¶ 40-41.)

The Policy covers Excalibur for employee theft with a $2,500,000 limit of insurance and $15,000 deductible per occurrence.  (Id. at ¶9.)  The following provisions of the Policy are relevant for the present motion to dismiss.  Endorsement No. 3 to the Policy, entitled "Loss Payable," and applicable specifically to § 1031 transactions, provides:

A.      Schedule

* * *

Client/Exchangers up to and including the amount that each has deposited with you

2

in trust, to whom you provide Section 1031 exchange services while acting as a qualified intermediary in a tax deferred exchange of property intended to qualify under Internal Revenue Code 1031.

* * *

B.    Provisions

   1.    You agree that any loss payable under this insurance shall be paid to the Loss Payee shown in the Schedule as its interests may appear and any such payment shall constitute payment to you.  We agree that we will make all such payments to the Loss Payee, and we will not make any payment solely to you unless we receive a request in writing from the Loss Payee to make such payment to you.

   2.    This Insurance is for your benefit only.  It provides no rights or benefits to any other person or organization including the Loss Payee, other than payment of loss as set forth in this endorsement.

   Any claim of loss that is covered under this insurance must be presented by you.

(Mem. of Law of Def. Liberty Mutual Ins. Co. in Supp. of its Mot. to Dismiss [hereinafter

"Def.'s Br."], Ex. C., Commercial Crime Policy, Endorsement No. 3.)  Additionally,

Endorsement No. 6 changes the Policy in several respects.  In relevant part, it provides:

A.    The following insuring agreement is added to Section A.    Insuring Agreements: Clients' Property

   We will pay for loss of or damage to "money", "securities", and "other property" sustained by "your" "client" resulting directly from "theft" committed by an identified "employee", acting alone or in collusion with other persons and/or "you", any of "your" partners or "members" whether acting alone or in collusion with others.

* * *

C.    Under Section E. Conditions:

   1.    Paragraph (1) of the Duties in the Event of Loss Conditions is replaced by the following:

3

Notify us as soon as possible.

2.       The Ownership of Property; Interests Covered Condition is replaced by the following:

The property covered under this Insuring Agreement is:

a.       Limited to property which is held in a financial institution account in a transaction involving "you" as a qualified intermediary for a tax-deferred exchange of property intended to qualify under Internal Revenue Code 1031.

However, this insurance is for "your" benefit only.  It provides no rights or benefits to any other person or organization, including your "client".  Any claim for loss that is covered under this Insuring Agreement must be presented by "you".

* * *

D.  Under Section F.  Definitions:

1.       For the purposes of this Insuring Agreement, Clients' Property, the following definitions are either added or replaced by the following:

a.  "Client" means any party for whom you perform services under a written contract.
b.  "Theft" means the unlawful taking of "money", "securities" or "other property" to the deprivation of your "client".
c.  "You" and "your" refers to the Named Insured shown in the Declarations and/or any natural person who is an owner of the Named Insured.

(Id., at Endorsement 6.)  There is no dispute that Carteret is a "Client" under the Policy, and that

"you" refers solely to Excalibur, the Named Insured.

On August 19, 2008, Excalibur provided a notice of loss to Liberty Mutual.  (Compl. at ¶

23.)  "Liberty Mutual subsequently requested that Excalibur submit a proof of loss form pursuant

to the requirements of . . . the Policy."  (Id.)  In response, Excalibur provided a proof of loss form

4

to Liberty Mutual, but did not sign or notarize the form due to the Fifth Amendment concerns of

its representatives.  (Id. at ¶ 24.)  The cover letter submitted with the proof of loss form stated:

"Excalibur is prepared to cooperate fully and answer any questions you may have concerning the

claim as required by the policy, so that the claim may be processed for payment to Carteret

Ventures, LLC, the intended beneficiary and loss payee herein . . . ."  (Id.)  Liberty Mutual

responded that the proof of loss form must be signed and notarized by an authorized

representative of Excalibur.  (Id. at ¶ 26.)  Carteret thereafter submitted a proof of loss form

signed by its managing member, Harvey Schultz.  (Id.)  Counsel for Liberty Mutual responded by

asserting that only Excalibur, the insured, could submit the proof of loss form.  (Id. at ¶ 27.)  To

date, Excalibur has not submitted a signed and notarized proof of loss form.

## II.    LEGAL STANDARD

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct.

1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In evaluating

the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the

complaint as true and draw all reasonable inferences in favor of the non-moving party.  See

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).  Additionally, in evaluating a

plaintiff's claims, generally "a court looks only to the facts alleged in the complaint and its

attachments without reference to other parts of the record."  Jordan v. Fox, Rothschild, O'Brien

& Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, "a document integral to or explicitly

relied on in the complaint may be considered without converting the motion [to dismiss] into one

for summary judgment."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.

1997) (internal quotations omitted, alteration in original).  Here, Liberty Mutual attaches to its motion a copy of the Policy.  The Policy is integral to Carteret's claims and Carteret explicitly references to and quotes from the Policy in its Complaint.  Therefore, the Policy is properly considered for this motion.

## III.  DISCUSSION

Liberty Mutual argues that Carteret does not have standing to pursue a direct claim against it under the Policy.  In essence, Liberty Mutual argues that Carteret has no direct rights under the Policy and that notice and proof of loss must be submitted by Excalibur in order for Carteret to receive any benefits under the Policy.  On the other hand, Carteret argues that it does have standing under the Policy either under the provisions of the Policy itself or as a result of the settlement agreement entered between Excalibur and Carteret in the prior state court proceeding.  Alternatively, Carteret argues that it has equitable rights under the Policy given the circumstances of this case.

### A.    Standing Under the Policy

Since this Court presently exercises its diversity jurisdiction over Carteret's Complaint, the law to be applied is that of New Jersey, the forum state.  See Am. Cyanamid Co. v. Fermenta Animal Health Co., 54 F.3d 177, 180 (3d Cir. 1995).  Under New Jersey law, a court is to give the terms of an insurance contract their "plain, ordinary meaning."  President v. Jenkins, 853 A.2d 247, 254 (N.J. 2004).  "If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased."  Id.  But, if the terms are ambiguous, a court should "interpret the contract to comport with the reasonable expectations of the insured, even if a close reading of the written text reveals a contrary meaning."  Zacarias v.

6

<u>Allstate Ins. Co.</u>, 775 A.2d 1262, 1264 (N.J. 2001). Additionally, generally under New Jersey law, "[a] loss payee is not an insured but only 'a mere appointee [of the insured] who may not recover if the insured has breached any provision of the policy which would prevent recovery by him.'" <u>Rena v. Brien</u>, 708 A.2d 747, 754 (N.J. Super. Ct. App. Div. 1997) (alterations in original) (quoting <u>Highway Trailer Co. v. Donna Motor Lines, Inc.</u>, 217 A.2d 617, 620 (N.J. 1966)).

Liberty Mutual argues that under the Policy Excalibur, the Named Insured, is unambiguously the only party with any rights, and that at no point did the Policy extend the rights of Excalibur to any other party, including a loss payee. Endorsement No. 3 provides that the Policy is "for your benefit only" and "provides no rights or benefits to any other person or organization including the Loss Payee, other than payment of loss." Endorsement No. 6 provides that the Policy "is for 'your' benefit only" and "provides no rights or benefits to any other person or organization, including your 'client'." Endorsement No. 6 also defines "[y]ou" and "your" as "the Named Insured . . . and/or any natural person who is an owner of the Named Insured." Thus, Liberty Mutual argues that the Policy is unambiguously "a fidelity insurance policy, *i.e.* a direct, first-party indemnity insurance contract." (Def.'s Br., at 10.)

Under a fidelity insurance policy the insurer is liable only in the event of a loss by the insured and "the right to recover . . . belongs solely to the insured absent some provision in the [Policy] to the contrary." <u>Resolution Trust Corp. v. Moskowitz</u>, 845 F. Supp. 247, 250 (D.N.J. 1994) (citing <u>Anderson v. Employers Ins. of Wausau</u>, 826 F.2d 777, 780 (8th Cir. 1987)), *vacated in part*, No. 93-2080, 1994 U.S. Dist. LEXIS 15259 (D.N.J. Aug. 31, 2004); <u>see also</u> <u>Liberty Mutual Fire Ins. Co. v. Kahlaid, Inc.</u>, 489 A.2d 1231, 1232 (N.J. Super. Ct. App. Div.

1985) ("If the loss is not payable to the insured, it is not payable to the loss payee."). Thus, where " the policy expressly states that recovery under the policy is limited to the named insured, . . . third party claims against the insurance proceeds must be rejected." In re Tri-State Armored Serv.'s, Inc., 366 B.R. 326, 345 (D.N.J. 2007).

Carteret disagrees that the Policy only provides rights to Excalibur.  It argues that pursuant to Endorsement No. 3, a designated loss payee has a right to "payment of loss as set forth in this endorsement."  (Def.'s Br., Ex. C., Commercial Crime Policy, Endorsement No 3.) Carteret also argues that Endorsement No. 6, regarding insurance of "Client's Property," also supports its position that the Policy was meant to protect not only the insured, but also clients of the insured.  Thus, Carteret argues that the Policy is ambiguous as to the rights of other parties and that "a broad and liberal view should be taken where the policy provisions relate to the inclusion of persons other than the named insured within the protection afforded." Scott v. Salerno, 688 A.2d 614, 618 (N.J. Super. Ct. App. Div. 1997).

This Court disagrees with Carteret.  The Policy in this case expressly states that it is for Excalibur's benefit only and that it "provides no rights or benefits to any other person or organization including the Loss Payee, other than payment of loss."  By the clear and unambiguous terms of the Policy, Carteret has no rights under the Policy except to receive payment of a loss once identified.  The Policy expressly and unambiguously also provides that "[a]ny claim of loss that is covered under this insurance must be presented by [the Named Insured]."  Thus, Excalibur clearly is the only party who can trigger a loss under the Policy. Until Excalibur makes a proper claim for a loss, there is no loss payable to anyone.  This Court finds that Carteret does not have standing under the terms of the Policy to object to Liberty

Mutual's refusal of Excalibur's incomplete proof of loss submission; it does not have a right to submit a proof of loss under the Policy.

Alternatively, Carteret argues that it has standing as a result of the settlement between it and Excalibur. Under this theory, Carteret argues that the prior settlement places it "essentially in the position of an assignee" of the insured's policy rights under New Jersey law. Hartford Fire Ins. Co. v. Conestaga Title Ins. Co., 746 A.2d 460, 462 (N.J. Super. Ct. App. Div. 2000) (a case dealing with the rights of a judgment creditor). Carteret states in its opposition that "[r]esearch did not reveal any New Jersey cases dealing with whether a settlement would provide the same status [as that of a judgment creditor]." (Br. in Opp'n to Def.'s Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) [hereinafter "Pl.'s Opp'n"], at 16.) This Court finds that Hartford Fire is not controlling in this case. Not only does it not relate to the effect of a settlement, but here, the Policy expressly states that it only is for the benefit of the named insured, Excalibur. It also expressly states that the insured's "rights and duties under this policy may not be transferred without [Liberty Mutual's] written consent." (Def.'s Br., Ex.C, Commercial Crime Policy, Sec. E(1)(w).) Thus, under the Policy, Excalibur could not transfer its rights to Carteret by settlement or otherwise without Liberty Mutual's consent. The Court, therefore, finds that Carteret also does not have standing as a result of the prior settlement agreement.

### B. Equitable Rights

Carteret also argues that it is a loss payee under the Policy with the exclusive right to receive payment of the loss, and that, as such, it should not be forced to forfeit its rights because Excalibur refuses to pursue the claim itself. Carteret thus argues that it has acquired independent equitable rights in this case, and that this Court should accordingly grant coverage.

9

While "[i]t is true that ordinarily the rights of a loss payee are derivative and cannot exceed those of the insured," as discussed above, the New Jersey Supreme Court has found that, under some circumstances, "a loss payee [may] acquire[] independent equitable rights, which the insurer is bound to regard." Highway Trailer, 217 A.2d at 620 (internal quotations omitted).  In Highway Trailer, the insurer expressly named the loss payee in the policy and was aware of the loss payee's interests in the proceeds of the policy.  Id. at 620-21.  Most importantly, the insurer in that case failed to disclose to the loss payee defects in the claim submitted by the insured.  The Court held that the insurer's conduct "was designed to lead [the loss payee] to believe that all the conditions of the policy . . . had been met and that settlement merely awaited the completion of the insurer's investigation."  Id. at 621.  Because of this conduct the court held that,

> [W]here, as here, the insurer knows that the loss payee of a theft insurance policy has a vital interest in the claim and by its conduct leads the loss payee reasonably to believe that the claim has been adequately presented, thereby lulling the loss payee into inaction, the insurer is estopped from asserting any defect in the presentation of that claim.

Id.; see also Lanziano v. Cocoziello, 701 A.2d 754, 757 (N.J. Super. Ct. App. Div. 1997).  In this case, Liberty Mutual has made clear that it will not accept Excalibur's unsigned proof of loss form.  It has also made clear to Excalibur and Carteret that pursuant to the Policy only Excalibur, and not Carteret, may submit the proof of loss form.  As opposed to Highway Trailer, this is not a case where equitable estoppel is appropriate.  Carteret has presented no evidence that Liberty Mutual has deceived it or attempted to lull it into inaction.  Carteret's issue is with Excalibur and its failure to file a complete proof of loss form.  Therefore, the Court finds that Carteret's equitable rights argument is also without merit; equitable considerations do not support a finding of independent rights in favor of Carteret that override the express language of the Policy.

**IV.    CONCLUSION**

For the above reasons, the Court dismisses Plaintiff's Complaint in its entirety.  An

appropriate Order accompanies this Opinion.

DATED: October 2, 2009                          /s/ Jose L. Linares
                                                United States District Judge